State v. Robinson.

---

No. 27,040.

THE STATE OF KANSAS, *Appellee,* v. J. O. ROBINSON, *Appellant.*

(259 Pac. 691.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Preliminary Examination—Validity.* Error assigned on the want of a preliminary examination before subjecting defendant to prosecution for feloniously depriving the prosecuting witness of money by false pretenses considered and not sustained.

2. SAME — *Preliminary Examination — Qualification of Examining Magistrate.* The official qualifications of the examining magistrate were not subject to meritorious challenge.

3. INDICTMENT AND INFORMATION—*Joinder of Offenses—Offense Composed of Continuous Acts.* The amended information which set out with much particularity the facts whereby defendant and two coconspirators obtained five successive sums of money from the prosecuting witness by the continuing use of the same fraudulent scheme founded upon a tissue of false pretenses to which details were superadded as the fraud progressed did not

Conspiracy, 12 C. J. pp. 550 n. 63, 638 n. 80, 643 n. 48, 51; 5 R. C. L. 1078. Continuance, 6 R. C. L. 556. Criminal Law, 16 C. J. pp. 264 n. 47, 285 n. 55, 59, 323 n. 95, 330 n. 3, 331 n. 12, 333 n. 31, 377 n. 82, 489 n. 11, 491 n. 38, 40, 501 n. 88, 588 n. 8, 591 n. 33, 1088 n. 18, 1217 n. 44; 17 C. J. pp. 87 n. 43, 44, 91 n. 82, 317 n. 10. Indictments and Informations, 31 C. J. pp. 685 n. 37, 770 n. 4, 771 n. 14; 14 R. C. L. 195. False Pretenses, 25 C. J. pp. 644 n. 3, 649 n. 29, 650 n. 42.

necessarily constitute more than a single criminal offense and defendant's motion to quash was properly overruled.

4. CRIMINAL LAW — *Double Jeopardy — Effect of Acquittal of One Coconspirator.* Where three coconspirators are charged in an information with obtaining money by false pretenses and one of them is separately tried and acquitted and the charge is dismissed against the second, such acquittal and dismissal are not a' good defense to a prosecution of the third offender, and his objection to the introduction of evidence was properly overruled.

5. CONTINUANCE — *Absent Witnesses.* Error based on the overruling of defendant's application for a continuance considered and not sustained.

6. FALSE PRETENSES—*Evidence—Sufficiency.* Defendant's demurrer to the evidence was properly overruled.

7. SAME—*Instructions.* Error assigned on the trial court's refusal to give further instructions to the jury after they had deliberated for some time examined and not sustained.

8. CRIMINAL LAW—*Evidence—Admissibility of Similar Offenses.* Objections to evidence considered and not sustained.

9. APPEAL AND ERROR—*Necessity of Presentation of Motion for New Trial.* Error assigned on the alleged prejudicial attitude of the trial judge, not fairly presented to the trial court for its due consideration on a motion for a new trial, does not constitute a basis of reversible error.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed October 8, 1927. Affirmed.

*L. A. Hasty, Robert Hasty* and *George Hasty,* all of Wichita, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *William J. Wertz,* county attorney, *George L. Adams, Wilmer B. Harms* and *Paul K. Smith,* deputy county attorneys, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant was convicted of obtaining money by false pretenses and appeals.

According to the evidence for the state, the defendant was one of three men who very cleverly imposed on the confidence of one C. P. Hale, whereby they fraudulently induced him to make repeated investments in a certain oil and gas lease of little or no value.

1. The first error urged is that defendant never had a preliminary examination and had not been bound over for trial upon the charges set forth in the information and that his plea in abatement alleging these facts should not have been overruled. However, this plea contained an admission that a complaint had been filed against him

and two codefendants, that a warrant had issued thereon and that he had entered into a recognizance for his appearance before an examining magistrate pursuant thereto, and that one E. E. Enoch presumed to qualify and serve as an examining magistrate and judge *pro tem.* of the city court of Wichita, and that defendant was given a "pretended preliminary examination on the charge of obtaining money by false pretenses as set forth in said warrant," following which Enoch, the "pretended examining magistrate," bound him over to appear in the district court for trial. In this plea in abatement, also, the record of the examining magistrate was incorporated by reference, so the entire matter was before the district court. There was no prejudicial variance between the charge as originally stated in the complaint and warrant and·that stated in the amended information. Both sufficiently apprised the defendant that the state's legal machinery was in motion against him and his codefendants for the grievous offense of swindling C. P. Hale out of the large sum of $28,500 by a threadbare confidence game of false pretenses. On that subject there was a thorough airing of the main features of the offense at the preliminary examination, and the magistrate was.authorized to bind over defendant for whatever crime or crimes the examination showed him to be probably guilty of, whether specifically set out in the complaint and warrant or not. (R. S. 62-621; *State v. Shaw,* 72 Kan. 81, 82 Pac. 587; *State v. Handrub,* 113 Kan. 12, 213 Pac. 827; *State v. Miner,* 120 Kan. 187, 190, 243 Pac. 318.)

Touching the official character of the examining magistrate, this court has repeatedly condemned the practice of switching the inquiry in a criminal case from that of the guilt or innocence of the accused to that of the magistrate's title to his office (*Hancock v. Nye,* 118 Kan. 384, 234 Pac. 945; *State v. Billings,* 120 Kan. 162, 164, 242 Pac. 136), and its inexcusable recurrence can have no other effect than to suggest to us at the outset the probability that we have to deal with another appeal quite devoid of merit.

2. Defendant next attacks the amended information, which went into much detail in narrating the facts of the crime. The large sum of $28,500, of which defendant and his associates deprived the prosecuting witness, was not obtained in one lump sum, but in various sums which eventually totaled $28,500. They induced Hale to invest in the lease by the false pretense that they too were making similar investments in it. They induced him to serve as title holder

of the lease and then caused spurious telegrams to be sent to him pretending to offer gradually increasing bids for the lease, and then pretended to disagree on the advisability of accepting some one of these pretended bids, thereby inducing him to buy the interests of first one and then another of the coconspirators. The fraudulent scheme was essentially the same from first to last, although details were added to the tissue of false pretenses as the perpetration of the fraud on Hale progressed.

It seems to be defendant's contention that he should have been prosecuted on separate and independent counts for each particular sum he and his codefendants obtained from Hale, viz.: Count *one*, for the first sum of money, $3,500, they got from Hale; count *two*, for the next sum, $5,000, so taken; count *three*, for the next sum, $7,500; count *four*, for the next $6,000; and count *five*, for the final sum, $6,500. It is possible a prosecution and conviction of defendant on five separate counts with separate and consecutive sentences thereon might have been upheld. But the state's theory of the case was a rational one, and one well supported by the evidence —that Robinson and his associates abstracted all these sums of money from Hale pursuant to a single definite plan, and that the repeated receipts of these sums of money were but incidents of one continuing offense.

In *Beasley v. State*, 59 Ala. 20, it was held that the obtaining of different quantities of merchandise on separate occasions several days apart by the continued practice of the same false pretense constituted one criminal offense and was not a case for election. In *Rosekrans v. People*, 10 N. Y. (3 Hun) 287, 292, 293, the court had to determine whether the counterfeiting of separate written instruments which pretended to be a constable's verified account against Saratoga county for official services constituted one or several offenses of forgery. It was held that the bill or account itself, the signature to the affidavit, and the signature to the jurat or certificate, constituted but one crime of forgery. The court said:

"The public prosecutor may, however, allege in the indictment several felonious acts, which, in themselves separately considered, are distinct offenses, so far as they are essential portions of one continuous transaction or connected charge, and collectively constitute but one offense."

See, also, *State v. Richmond*, 96 Kan. 600, 152 Pac. 644; *State v. Moore*, 86 Minn. 422, 61 L. R. A. 819 and note; 31 C. J. 685, 770, 771.

The information was in fact a bill of particulars, but certainly

defendant had no just complaint thereat, although the county attorney might thereby have been handicapped in the prosecution of the charge if he had been less sure of the facts and the evidence and witnesses available to prove them. The motion to quash was properly overruled.

3. Error is also assigned in overruling defendant's objection to the introduction of evidence. This objection was based upon the fact that one of the codefendants, George Marquess, was acquitted on the same charge, and the other defendant, George W. Herrman, was never brought to trial, and the charge against him was eventually dismissed. Defendant asserts (with what basis of fact is neither clear nor important) that the county attorney hesitated to bring Herrman to trial because he was a banker, and public confidence concerning bankers had been greatly shaken in that locality owing to delinquencies of a few persons engaged in that vocation. Be that as it may, the acquittal of Marquess and the dismissal of the charge against Herrman were not good grounds of objection to the introduction of evidence against this defendant. (*State v. Bogue*, 52 Kan. 79, 34 Pac. 410.) Defendant invokes some rule that requires a dismissal of a charge of conspiracy against one defendant when his codefendant is acquitted on the same charge. (*Feder v. United States*, 257 Fed. 694, 6 A. L. R. 370.) This rule is of no significance in this jurisdiction, since we have no crime of conspiracy as such. With us, the term "conspiracy" is merely a matter of denunciatory phraseology. It means an agreement of evil purpose. Criminal culpability only begins when some overt act is committed or attempted to carry that evil purpose into effect.

4. Another error is based upon the trial court's ruling on defendant's application for a continuance. On cross-examination of defendant, some facts were brought out concerning a business transaction in which defendant had been engaged. It is spoken of in the record as the "Radford deal." Defendant desired a continuance until he could interview certain witnesses who might know something concerning this "Radford deal." The court offered to call the clerk of the court and have subpœnas issued for whatever witnesses defendant desired, and to have the sheriff serve these subpœnas between the hour of adjournment and the hour when court would reconvene the following morning. Defendant did not take advantage of that privilege, nor did he show either then or later or in presenting his motion for a new trial what the witnesses would have testified to. So prejudicial error cannot be predicated on this assignment.

5. Error is also assigned on the trial court's ruling on defendant's demurrer to the evidence. But the record abounds with evidence to show that Robinson, Marquess and Herrman deliberately planned and executed a scheme to swindle C. P. Hale out of a large sum of money by selling him an interest in a 2,000-acre oil-and-gas lease of the merely speculative value of $1 to $3 per acre, and that pursuant thereto they obtained from him sums of money aggregating $28,500, and did it, too, by false and fraudulent pretenses of its value and by inducing various persons to send to Hale pretended and fictitious offers and bids for the lease. It is useless to narrate the details of this nefarious transaction. The information occupies ten closely typewritten pages of the record, and the state's evidence to prove the charge was wanting in no particular. It is suggested that a mere expression of opinion of the value of the lease would not constitute an element in the commission of the crime of obtaining money by false pretenses. Quite true. But we have no such case to consider here.

It is suggested that "Hale was not a novice in the oil game." To this court a patient reading of the record portrays a want of sophistication and a credulous simplicity on the part of the prosecuting witness which is really astonishing; but however that may be, we could not declare a rule that the penal offense of obtaining money by false pretenses only applies where practiced on unsophisticated persons, and that all others are fair game. (*State v. Nash,* 110 Kan. 550, syl. ¶ 4, 204 Pac. 736.) The demurrer to the evidence was properly overruled.

6. Another error slightly pressed relates to the trial court's refusal to give additional instructions to the jury. After it had deliberated for some time, the court called the jury and inquired how they stood. The foreman said, "We stand eleven to one." Then the court asked if there was anything in the way of additional instructions he might give that would assist them. The foreman replied:

"Only things I can think of is whether Mr. Hale knowing what he was going into with his eyes open all the time would make any difference."

The court then told the jury that the point inquired about was covered in instructions numbered 21, 22, 23 and 24. An examination of these shows nothing lacking to correctly guide the jury's deliberations.

7. Defendant also complains of the admission of testimony touching the fictitious offers and inquiries for the lease which were insti-

gated by defendant and his coconspirators, Marquess and Herrman, to further their evil purpose of inducing Hale to make additional investments in the lease by the pretense that it was constantly increasing in value. That evidence was competent. Nor was it necessary for the state to prove that every such offer, bid or inquiry was fictitious and prompted by the coconspirators. It was quite enough when shown that any one of them which induced Hale to put his money into the lease was fictitious and prompted by the defendants for that evil purpose. (*State v. Hetrick*, 84 Kan. 157 and citations, 113 Pac. 383; *State v. Mathes*, 108 Kan. 488, 492, 196 Pac. 607.)

8. Error is assigned on the permission given the state to go into the extraneous "Radford deal." It was competent, however, since defendant gave testimony concerning it himself and because his main objection to it was merely want of time to get witnesses from Augusta to testify further concerning it. At the hearing of the motion for a new trial nothing was offered which would have warranted a continuance on account of the disclosure of the "Radford deal," nor to explain it so as to exonerate Robinson concerning it. It was competent under the rule concerning the admissibility of similar offenses. (*State v. Wahl*, 118 Kan. 771, 236 Pac. 652.) It is suggested, however, that no false pretense was shown in this "Radford deal." If so, then it is quite useless to waste time and book space in its discussion, for its admission would have been immaterial unless defendant had been misled or prejudiced thereby, and no showing to that effect is disclosed:

9. Complaint is also made against the general attitude of the trial court. It is asserted that the trial judge assumed a boisterous and belligerent manner towards the defendant, and otherwise disclosed prejudice against him. The record does not support this contention. This is a complaint which should not be brought in this court against a trial judge, without first presenting it to the trial judge himself, at a timely presentation of the motion for a new trial, and in its presentation to him it should be backed by affidavits or other sworn testimony. Otherwise there is nothing available upon which such a complaint can be reviewed on appeal. In the tedious grind of a trial, judges, being human, may sometimes show testiness or temper; but long ere the motion for a new trial is up for consideration their equipoise will be regained, and defendant's counsel may then talk to the court as man to man on the possibility of prej-

udice because of the judge's show of temper in the presence of the jury. As said in *American Automobile Ins. Co. v. Clark,* 122 Kan. 445, 252 Pac. 215, unless counsel for defendant, in presenting their motion for a new trial, respectfully but courageously remind the trial judge himself of such incidents it is useless to air them in the supreme court, for no reversible error can be predicated thereon— simply for want of an official record to chronicle the incidents complained of.

The other matters urged in behalf of defendant have been carefully considered, but they suggest nothing requiring further extension of this opinion; nor does anything appear in this case which suggests the possibility that justice may have miscarried.

The judgment is therefore affirmed.