No. 27,060.

THE AMERICAN AUTOMOBILE INSURANCE COMPANY, *Appellant*, v.
SCOTT CLARK, *Appellee*.

SYLLABUS BY THE COURT.

1. APPEAL AND ERROR—*Right of Review—Necessity of Motion for New Trial.*
Error cannot be predicated on remarks and comments of the judge in the
course of a trial unless timely exception is taken thereto and brought
specifically to the trial court's attention by the presentation of a motion for
a new trial covering the matters complained of, so that the trial court itself
may have an opportunity to rectify any prejudicial consequences which may
have flowed from its ill-advised observations in the presence of the jury, if
any such were made.

2. TRIAL—*Conduct of Trial Judge.* The remarks and comments of the judge
in the course of the trial in the instant case examined, and *held* that the
error assigned thereon is not sustained.

3. MOTOR VEHICLES—*Collision—Negligence—Instructions.* Errors assigned on
instructions examined, and held that those given were correct statements of
pertinent law.

4. LIABILITY INSURANCE—*Subrogation of Insurer—Payment by Wrongdoer to
Insured Without Knowledge of Right.* Where an automobile was wrecked
in a collision and its owner held a policy of insurance covering collision
damages, which policy provided that the insurance company on payment of
such damage would be entitled by subrogation to the owner's rights against
the wrongdoer in such collision, the insurance company cannot recover from
the wrongdoer when the latter, without notice or knowledge of the insurance
company's right of subrogation, settled with the owner of the wrecked car
all damages attributable to defendant.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion
filed January 8, 1927. Affirmed.

*J. S. Simmons, Stuart Simmons, Max Wyman* and *Alva L. Fenn,* all of
Hutchinson, for the appellant.

*A. C. Malloy, Roy C. Davis* and *Warren H. White,* all of Hutchinson, for
the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by the plaintiff insurance com-
pany against defendant by whose negligence it had to pay a policy

Appeal and Error, 3 C. J. pp. 909 n. 81, 979 n. 57; 4 C. J. p. 956 n. 45.  Lia-
bility Insurance, 36 C. J. p. 1115 n. 83; L. R. A. 1916A 1282; 14 A. L. R. 192; 26
A. L. R. 431; 40 A. L. R. 1001.  Motor Vehicles, 28 Cyc. p. 49 n. 49.  Trial, 26
R. C. L. 1025.

of insurance covering a collision of automobiles. Plaintiff's claim was based upon its subrogation to the rights of the insured.

The material facts were these: One A. L. Richardson had a Studebaker automobile which needed some overhauling and he took it to defendant's garage and machine shop·for repair. One of defendant's employees took the car out of the workshop to test it and drove it at high speed along a street and road leading westward out of the city of Hutchinson. It collided with a Ford car at a street intersection, and the Studebaker was badly wrecked. Its owner, Richardson, held a policy of insurance protecting his car from collisions, which policy had been issued by the plaintiff insurance company.

The insurance company sent a representative to Hutchinson, who called upon the defendant and obtained from him an estimate of the cost of repairing the automobile, which sum defendant, after consulting with his expert mechanics, placed at $796. The insurance company then paid that amount to Richardson on the policy, one of the terms of which provided:

"Upon payment of any loss, damage, claim or expense under this policy, the company shall be subrogated, to the extent of such payment, to all rights of recovery of assured against others for such loss, damage, claim or expense, and the company shall be entitled, if it so desires, to institute, conduct and prosecute, in the name of the assured or in its own name, any claim of the assured for indemnity, damages or otherwise against any third party. The assured shall render all possible coöperation and execute all papers requested by the company to enable the company to secure all rights to which it may be entitled under this policy."

Meantime Richardson and defendant effected a settlement of Richardson's claim for damages caused by the negligence of defendant's employee. By the terms of that settlement defendant gave Richardson a new car worth $2,415 for the damaged· car and $1,146 in cash. In consequence of this settlement, which defendant claimed to have made without notice or knowledge of plaintiff's claim or right through subrogation, he denied liability.

Hence this lawsuit. The pleadings developed the foregoing facts and other more or less pertinent incidents; and a trial by jury pursuant thereto resulted in a verdict and judgment in favor of defendant.

Plaintiff appeals, and the first error urged on our attention is based upon "certain remarks and comments" of the trial judge in the presence of the jury, "which indicated his opinion that the plaintiff should not recover and which were prejudicial to the plaintiff." In support of this specification of error, plaintiff directs our attention

to cited pages of the abstract which show that the judge took part in the examination of a witness to develop the facts touching the range of vision of the drivers of the automobiles as they approached the point of collision. Again, while counsel for appellant sought to elicit from a witness his estimate of the speed at which the Studebaker car was being driven from the sound, the record reads:

"[COUNSEL FOR PLAINTIFF]: It was the impression you got—"

BY THE COURT: Impressions don't go. . . .

"Q. Was it shortly after the car passed you, the roar stopped; is that the way you wish us to understand it?

"BY THE DEFENDANT: We object to that as incompetent, irrelevant, and immaterial and leading.

"BY THE COURT: Yes; it wouldn't help us any in the case to know when the roar stopped. He might have shut off the muffler or something. . . .

"Q. Then the car passed you two and one-half blocks before it had this collision at Van Buren and Second?

"BY THE COURT: He didn't say that. He said it is two and a half blocks to the railroad track.

"A. No, sir; I beg your pardon.

"BY THE COURT: How far is it to the railroad track? A. Well, it must be about a block and a half. Just a little over a block and a half. . . .

"Q. Did you notice his actions at all?

"BY THE DEFENDANT: We object to that for the reason that it is too remote.

"BY THE COURT: Sustained, exception allowed.

"Q. You say you didn't observe what the driver was doing when he passed you? A. He was going pretty fast.

"BY THE DEFENDANT: We object to the question. We object to that question, and the question and the objection was sustained.

"BY THE COURT: Yes; the objection has been sustained twice to that question. Exception allowed. What a man is doing in driving a car two blocks away wouldn't cut any figure as to what he was doing when the accident happened. Exception allowed. . . .

[COUNSEL FOR PLAINTIFF]: "We wish to show by this witness what the driver of the car was doing at the time he passed him, which was two and one-half blocks from the intersection where the accident occurred.

"BY THE COURT: Unless it was something that was presumed would be continued the whole time, you couldn't get it in. I don't know what you are trying to prove. He said he didn't observe what he was doing.

"BY THE WITNESS: I was mistaken if I said I didn't observe what he was doing. I didn't testify I didn't observe what he was doing."

When defendant was on the witness stand his counsel sought to develop the fact that defendant's employee who wrecked the insured car was a careful driver. The record reads:

"Q. Had he ever on any previous occasion ever been in any kind of accident or had any kind of a collision during the time that he was adjusting other cars prior to this time?

[COUNSEL FOR PLAINTIFF]: "We object to that as incompetent, irrelevant and immaterial.

"BY THE COURT: Sustained. That is presumed. They don't claim he ever did. The presumption is this is his first accident and that he was a careful man and everything.

[COUNSEL FOR DEFENDANT]: "I was just trying to show due care on the part of Mr. Clark.

"BY THE COURT: The presumption is he exercised due care. They don't claim he wasn't a careful man; they don't claim he was a negligent man in any way. Exception allowed."

It is appellant's contention that these excerpts from the record disclose an unfavorable attitude on the part of the trial judge whereby plaintiff's rights were prejudiced in the action. Appellant concedes that the trial court "acted absolutely conscientiously in this matter," but "simply had the idea to start on that the plaintiff should not recover, and stuck diligently and consistently to this from the examination of the first witness to the giving of the last instruction."

There are obvious limits to the scope of an appellate review. The mannerisms of the trial judge, the atmosphere of the court room, the decorum or want.of it which pervades a trial—these and many attitudes and incidents which exist or transpire in the course of the trial cannot be reproduced in the record (*State v. Stockton,* 119 Kan. 868, 872, 241 Pac. 688) and in the very nature of things can seldom be reviewed and redressed by an appellate court. (*Fowler v. Shaw,* 119 Kan. 576, 590, 591, 240 Pac. 970.) However, mere regard for the feelings of the trial judge will not excuse counsel from making timely objection to improper remarks of the trial court, nor will deference to his judicial position relieve them from their duty to direct the trial court's attention thereto, respectfully but frankly, in the motion for a new trial, and thus give the trial judge a fair chance to consider and correct, where necessary, any harsh, partial or prejudicial rulings or remarks he may have committed in the course of the trial. Unless this course is candidly and courageously followed, it is useless to bring such matters to this court for review. In *Brick v. Fire Insurance Co.,* 117 Kan. 44, 45, 230 Pac. 309, it was said:

"The purpose of a motion for a new trial is to give the court an opportunity to reëxamine rulings made in the course of the trial and to correct any errors in the proceedings, so that parties may avoid the trouble and expense of having them corrected on appeal. How could the court reëxamine and correct a ruling unless the party called attention to the particular one to which objection was

American Automobile Ins. Co. v. Clark.

made and the statement of the grounds of his objections: It is manifest that no specific ruling was brought to the attention of the trial court in the submission of the motion, and that it has had no opportunity to reconsider any objections or errors which might have been assigned as grounds for a new trial. Rulings of which a review is desired, whether or not they constitute grounds for a new trial, should be clearly pointed out to the court, and when this is not done they will as a general rule be deemed to have been waived."

So far we have discussed this point as if there might be some merit in this specification of error if it had been properly brought to the trial court's attention before bringing it here for review. But we must add that from our detached and neutral viewpoint the excerpts from the record as quoted above disclose nothing of consequence for appellant to complain of under this particular assignment.

Error is also assigned on this instruction:

" . . . Only in cases where the injury and damage is the proximate result of negligence can there by recovery under the law, and in this case if you find that the collision was a mere accident, and not caused by the negligence of Parker, but was the fault of the driver of the Ford, then you will find a verdict in favor of the defendant."

Parker was defendant's mechanic who drove the Studebaker car at the time of its collision with the other car, the Ford mentioned in the instruction. Plaintiff argues that the Ford driver's carelessness, if any, "would not have affected plaintiff's right to recover in this action." On the contrary, it should have a very decided effect upon this lawsuit. If the collision was due to any other cause than Parker's negligence, neither plaintiff as subrogee of Richardson nor Richardson himself would have had any claim against Parker's employer for the wreck of the Studebaker car; and one proper way of defending against this action, if the facts would permit, was to show that the collision was the fault of the Ford driver and not of Parker. The criticized instruction was quite correct.

Similar fault is found with other instructions given by the trial court. These have been examined. They were not inaccurate statements of law pertinent to the issues, but it is needless to set them out here.

Other assigned errors are argued together, and in substance the complaint therewith is in the admission of evidence covering the matter of Richardson's settlement with defendant for the negligence of Parker which wrecked the Studebaker car. It seems to have been plaintiff's theory of the case that defendant's settlement with Richardson had no bearing on plaintiff's subrogated claim against

defendant. If such indeed was plaintiff's theory of the case, it was in error. Its claim against defendant drew its only virtue, if any it had, from its contract with Richardson. It received from Richardson by subrogation, by express or implied assignment, whatever right of action for damages Richardson had against Parker's employer, this defendant. If Richardson settled with defendant whatever claim he had against the latter, there was an end of defendant's liability. We might have an altogether different case to consider if defendant had known of plaintiff's claim through subrogation to the rights of Richardson before defendant settled with Richardson. There was such an issue of fact in this lawsuit, but it was settled by the jury in favor of defendant; and there was no want of testimony to support that finding implied in the general verdict; and the fact that some rather persuasive testimony was adduced tending to show that defendant had been notified by the plaintiff's agent of its claim through subrogation after it had paid Richardson and before defendant had settled with Richardson is of no consequence since the jury's general verdict discredited that testimony. Plaintiff's grievance is not justly directed towards defendant. It should look for redress to Richardson who apparently sacrificed its rights in settling with defendant for his claim for damages, which claim he had theretofore assigned to plaintiff by virtue of the terms of the insurance policy.

No prejudicial error of sufficient gravity to disturb this judgment is called to our attention. The judgment is therefore affirmed.